The next case is Weiss v. Macy's. It may come up a little more than that if you want. We're not bothered by the noise. Now I'm bothered by it. You go too far, the floor drops out. Oh, okay, good. Speeds up argument anyway. Mr. Parsons, good morning. Good morning, Your Honor. May it please the Court, my name is Brian Parsons. I'm in-house counsel on behalf of the appellant, Macy's Retail Holdings, Incorporated. This is a case that involves the enforceability of an arbitration agreement between Macy's and its employee, David Weiss. And the primary issue is this. When an employee is placed on notice of new terms and conditions of employment and that employee continues their employment, does their continued employment constitute consent to the new terms and conditions? And this is an issue that's already been addressed by this Court in the Manigault summary order back in 2009, which involved identical circumstances. And in that decision . . . As far as notice is concerned, Macy's fills that element, if you will, by the operation of law. That is, notice was sent and it's a statement but it's a question. Notice was sent and even though he denies ever having received notice, it's presumed that he did. Correct. It's a question of the presumption of mailing and that's what the district court found that all of the declarations . . . Mailing the form or mailing the plan? Mailing the plan. The arbitration agreement . . . Plan. Correct. And when I say plan document, I mean arbitration agreement is what it's referring to. Which came into effect after Mr. Weiss had been an employee for a period of time. Correct. So there was a rollout of the arbitration agreement in 2003 that applied to all employees. And so every employee . . . There was . . . Mr. Weiss took issue with that. And he said that he has some disabilities, that his brother reads his mail to him. And they have a standard business procedure, if you will, at home for managing mail of this type. And his brother didn't recall this, nor did Mr. Weiss. And there was no evidence, I think, that there had been trainings presented at the store that he was at. And it seemed to me that there was potentially a genuine issue of material fact as to whether he had rebutted the presumption of receipt based on these assertions. Why isn't there a factual issue that's significant here that the district court should resolve? Well, number one, because Mr. Weiss did not present that argument of actually rebutting the presumption. No argument was actually presented. He requested the ability to file a surreply to address some of the documentation and evidence that Macy's had presented and specifically asked, I need the opportunity to potentially rebut that presumption, and then never filed the surreply. He was granted the ability to . . . He had the opportunity when he didn't file. Correct. So it's only here that we're hearing this. Correct. And even now, there's no actual case law that discusses rebutting the presumption, because the case law that exists in terms of rebutting the mailing presumption, all . . . I'm sorry. Go ahead. Case law or form of affidavit or other statement? Well, the case law talks about that denials of receipt in and of itself is not enough to rebut the presumption. And that's consistent across all the case law that exists, including the Manigault summary order that applied in St. . . Well, it does suggest. I mean, the Manigault summary order says that the evidence offered was insufficient to rebut the presumption that the mailing was received. And that suggests, of course, that one might be able to, in some circumstances, rebut the presumption. Correct. Absolutely. And the district court followed Manigault and reached the same conclusion, that the denials of receipt was not sufficient to rebut that presumption. What did the evidence show about the in-store discussions, never mind the planned document itself, but the discussions with the employees? The evidence was presented just that these were presentations that were given months before the actual rollout of the program that was held in every store, and any employee that worked was required to attend one of these sessions. Was arbitration discussed at the oral discussions? Yes. And it was discussed specifically in the PowerPoint presentation that was presented to the employees. It was communicated that this was going to be applied automatically to all employees and that employees would have an opportunity to opt out of Step 4 arbitration. Did the evidence . . . oh, go ahead. Was there any disputing evidence that the arbitration was discussed at the oral sessions? Yes. Mr. Weiss presented a declaration that he did not recall ever attending such a meeting. He didn't recall. Was there evidence that he actually attended, his attendance taken at those meetings, or this was just Macy's practice? It was Macy's practice. It was a business practice for all employees. I'm sorry. There were the trainings in-store and the mailing that the district court found confusing, talking about if you don't want to be covered by the benefits of arbitration, you can opt out. Correct. And so there are two problems with what the district court is finding in that regard. Number one, it focuses exclusively on the election form and doesn't incorporate the actual arbitration agreement that was also sent in the mailing that was supplied to Mr. Weiss and the same mailing that was supplied to Ms. Manigault and every other Macy's employee at the time. It also doesn't include viewing the brochure that was sent, which also discusses the arbitration agreement and what's involved. Taking any one of those documents in a vacuum might be confusing or counterintuitive, but when you look at them as a whole, it's very clear what's expected. In fact, the only evidence that was before the district court on the issue of understanding those documents, Mr. Weiss submitted a declaration that, hey, I've never seen this before. But he also submitted a declaration from his brother, Joseph. And Mr. Weiss's testimony was that my brother, Joseph, is the person I would have shown any employment-related documentation that I received, including anything from Macy's. And Joseph reviewed the documentation that Macy's sent, the plan document, the election form. And Joseph submitted a declaration that specifically said, I reviewed it. It's clear that this involves important employment-related rights. And he also offered evidence that, quote, I would have explained to him that signing the opt-out form meant he would not be forced to arbitrate with Macy's. I would have advised him to immediately sign and return the opt-out form, unquote. So the only evidence that was before the district court was that Joseph read these documents, and he understood very clearly what was needed to be done if he didn't want to participate in the arbitration agreement with Macy's. Was the brochure mailed with the plan or a separate mailing? It was at the same time. So the brochure, the plan document, a self-addressed, I think, stamped envelope, and the election form. If we were to think that the presumption was sufficiently rebutted to create a fact situation as to whether he saw the plan document and the brochure, and then on remand the district judge said, oh, yes, it is rebutted, and I find there is no, would it be Macy's position that the oral discussions at the meetings, those alone suffice to put him on notice, whether he was there or not? Yes, it would be enough to put him on notice because it was communicated during those meetings that all employers would be getting mailings in the future regarding this. Your view is the New York law says you can amend, for an at-will employee, you can amend by giving notice and the oral discussions give notice whether he chooses to attend or not? If the employee is on notice, yes, then the changed terms and conditions, and he continues his employment. Does notice mean evidence that he actually heard and understood it, or is it just the opportunity to know about it? I think it's the opportunity to know about it. And to ask questions. So your view would be you'd have a winning position even if a finding was made that he didn't get the mailing? If the district court found that he did attend the informational session and was advised and informed of the changed terms and conditions, yes. Do we have any New York cases? What's your best New York case? The best New York cases, it often comes up in the context of change compensation, right? So a commission agreement, so it's Patini, Hanlon, cases like that that talk about, you know. How about with respect to an arbitration agreement? In terms of actual New York cases, there's a lot of district court cases, including enforcing Macy's arbitration agreement. There's the Ferocci case. Of course, with respect to salary and change compensation and those sort of things, you're arguably on notice when you see the first bump or decrease in your paycheck, right? Correct. Or something else. And Macy's continued to send mailings to employees who did not opt out, and there was a welcome to the program brochure that was sent following. There was also a second opportunity to opt out given a year later. So it's not just even one mailing that was sent. There's multiple mailings that are sent to the same address where you receive W-2s, health benefits information, et cetera. Go ahead, please. I just wanted to clarify. I was under the impression that declarations from the brother and from a co-employee were submitted to the district court or before the district court. Correct. So the issue of non-receipt, the factual issue, was raised in the district court, was it not? The factual issue of non-receipt was raised, but the actual ‑‑ And the evidence was provided. Correct. Okay. But the argument wasn't made. There was no case law cited for what's required to rebut the presumption. There was no argument made about what's required to rebut the presumption. It was all framed specifically as Macy's has not met its initial burden. Does the opt‑out form say he loses the benefit of arbitration? I would have to look at it, but that sounds right. Isn't that a tad precious on Macy's part? I wouldn't frame it that way, but I also wouldn't strenuously object either. Page A97. 97. 97, yeah. Complete this form only if you do not want to be covered by the benefit of arbitration. And then the check box says, I decline the benefits of arbitration. Correct? Yes, that's correct. Maybe a guy who thought there are no benefits to arbitration doesn't sign that because he doesn't think there are benefits to arbitration. It would be cleaner to say, I decline arbitration. You're putting him in the position of agreeing with your view that arbitration is a benefit. And that's possible. That's not the evidence that was presented to the district court. As I mentioned, the only evidence was from Joseph who plainly understood what it meant. But the form was in front of the district court. It was. Judge Hellerstein had . . . it was Judge Hellerstein, right? It was, correct. He had a bit of a problem with the way it was worded, did he not? He did. Mr. Parsons, we'll let you sit down. And you've reserved two minutes for rebuttal. And Mr. Kornbaum. Thank you, Your Honor. Up. Good morning. Scott Kornbaum for Mr. Weiss. I want to correct a couple of statements of what's in the record and what's not. And regarding the issue of the presumption, whatever this court finds regarding the presumption of mailing, it does not apply to what took place in the store or did not take place in the store. At A143, Janet Rios, the co-worker who I believe Judge Korney was referencing, specifically says . . . I'm sorry, that's Mr. Weiss. Mr. Weiss at A143, plaintiff, not brother, specifically says nothing was ever discussed in the store. With me, about the arbitration program. I call it the SIS. At A146, Ms. Rios backs it up and says, I never received any documents in the mail. I never received any verbal information in the store. So, that requires a hearing slash trial before Judge Hellerstein, if the court finds the presumption is overcome. Let me just clarify that. Sure. So, the documents that we've been looking at, the declarations and so on, they were submitted to the district court in what context and in connection with what argument? I presume . . . I was not counsel below, but it makes sense to me in presuming that the presumption was overcome. That's the only way it makes sense. Your opposing counsel has . . . What Mr. Parsons correctly notes is that in the context of the argument of overcoming the presumption, the sequence of events went, Macy's filed its motion papers, then the opposition papers, which included these declarations and the brother's declaration, and the legal argument was that the presumption of mailing, which talks about processes, was not overcome. That was the focus of the argument. Then came in reply, more proof by Macy's about the regularity of its business practices, and then there was the request that was granted, and then it was raised at argument, but no further written submissions. Regarding the issue of waiver, there's no waiver here. The materials were presented. The court may not agree that it was overcome, the presumption, but it was presented, so it wasn't waived. What was mailed to Mr. Weiss, and this is at A33 and A34. One of Macy's employees submitted a declaration. What got mailed was the plan brochure and the election form, the plan itself and the election form, and the only discussion is in the election form about waiving, how one opts out, and I agree. I certainly have made the argument, which was before Judge Hellerstein, which was not presented before Judge Hellerstein about ambiguity, but Judge Hellerstein found because the materials for him to conclude as such were presented, and, of course, this court can affirm on any basis found in the record, and here's what Judge Hellerstein had to say. In the context of whether there was this offer, the election form is a remarkably counterintuitive, ambiguous, and misleading document. Nothing in the document makes clear that it is a contract. Rather, the election form asks the recipient to, quote, agree that I am waiving the ability to participate in step four, end quote, of the in-stores program, which Macy's benignly describes throughout the document as the benefits of arbitration. There's nothing, there isn't, from the employee's perspective, there is nothing, rarely, I tell my children, never, almost always the wrong answer, but arbitration is as pro-employer as it comes, and before someone who is learning disabled can waive his constitutional right to a jury trial, offers should be crystal clear, but one thing, you know, obviously the elephant in the room is Manigault, and I have to apologize when I said this, I use the expression this court can disregard Manigault. I misspoke. It shouldn't follow Manigault. Obviously the court has Manigault, it will consider Manigault, but I apologize for using the expression disregard, but I think Judge Kogan and Alvarez gets it right, because the presumption is about notice, it's not about contract formation, and recently Judge Kodal, in a case called Reitnor versus Tiffany and Company, 239 Fed Sub 3rd, 744 at 751, 2017, agreed with Judge Kogan and said that the rebuttable presumption does not apply to contract formation where there isn't an unwitting recipient. But we have notice, both in the form potentially of the mailing as well as the presentations, and then continued employment in that context, so that I guess Macy's would argue constitutes acceptance, in that they delivered the terms and they were entitled to impose terms. Why is that a mistaken understanding? In every case, save Manigault, that Macy's cites, it is undisputed that the at-will employee who continues to work got the notice. It's in every case that they cite. Whether it's orally told, and I agree with counsel that if there is an oral discussion with an at-will employee saying, look, I think it's Hanlon where the commissions get decreased and he's told, and he gets it, well, okay, you're subject to that change. But when there's no knowledge, you can't have that contract formation, and if there's any intellectual consistency or integrity to the at-will doctrine, right, which because remember what the purpose of the at-will doctrine is, what is the employee's right? Well, you have a choice. They've changed the plans. You know about it. Your options are to quit or to continue. But we have no finding as to whether arbitration was discussed in the presence of this employee. It's a factual dispute. It is an actual factual dispute. Well, all right, so it's a factual dispute which, if relevant, would have to be determined at trial. Correct. I agree, Judge. Would you think it's a fair statement that this judge based his ruling on contract formation solely on the opt-out form? No. I think what Judge Hellerstein used the opt-out form was to say there was no offer. Well, the answer to your question is yes, but not in the context of knowledge, but just he found the offer ambiguous. But in deciding there was no formation of a contract that waived arbitration, he dealt with the opt-out form alone. Fair to say? Yes. I do believe that's correct. If he should have looked at other things, even if they were in dispute, a remand is needed. Is that fair to say? Oh, yes. I believe the appropriate relief that we are entitled to. Well, no, I'm sorry. I misspoke. The court can affirm, if it agrees, that the offer is ambiguous. That this language in the opt-out form, just so we're clear, the brochure... Are you referring to it as a benefit? Is that the answer? Yes. It does more than just refer to it as a benefit, but the brochure, the plan, two things go. The plan in the election form is what's mailed to Mr. Weiss. And if my memory serves, the plan does not discuss how you opt out. It talks about arbitration, but it doesn't discuss how one opts out. So a remand would be necessary... No, I don't think a remand is necessary if you find the option form is ambiguous, because even if you look at Macy's materials, and I apologize if I'm speaking out of turn, I don't think they're discussing how you opt out. They're talking about arbitration. I'm not quite clear how it is ambiguous. I get how it's a little bit, well, I don't want to use too harsh a word, but... Disingenuous? That's a good one. Thank you. But we normally don't reject documents because they're disingenuous, although maybe we should. But your point is it's ambiguous. What's the ambiguity when it says if you don't want arbitration, sign here? I just want to pull, I want to just actually... Sure. And it could be found at 97. When read in context, it's confusing. You don't know what you're doing. An employee looking at this says, what am I supposed to do here? I'm declining benefits of arbitration. It says complete and return this form only if you do not want to be covered by the benefits of arbitration. Doesn't that pretty clearly mean if you sign it and send it in, there won't be arbitration? I don't think so, and I know Judge Heller... I'm sorry. What will there be? So what's the ambiguity? The one reading is there won't be arbitration. What's the other reading? That there will be arbitration. Even though you sign a form saying you won't get the benefits of arbitration? I think it... Well, no, that's a valid point, Judge. But it's still like, looking at it, it's like, what am I getting? What am I waiving? What am I getting? And as Judge Hellerson corrects, you don't waive benefits. Well, foolish people waive benefits. And so when you're looking at it from... Can you read it that way? Yeah. That it's really focusing on benefits rather than the arbitration form itself? Perhaps he did. I'm not sure. I want to get to his language. The language you just quoted to us minutes ago? Yes. Right. Yes. And he goes on a little bit more. I didn't repeat it. The other point I want to make is they... Macy's... I see my time is up. We'll have a little more discussion. Just... Parsons will have some... Macy's also talks about the... Macy's, in its brief at least, says, well, the election form's not part of the offer. The opt-out's not part of the offer. It's the arbitration. That's just... That can't be. That's disassembling what they're saying. They're taking away a right if the offer is only the arbitration. And it can't be superfluous. You read contracts as a whole and try to give meaning to every term. Let's say we disagree with you on whether there was a valid... I'll call it valid... Offer. What's your next argument? Well, it's... Well, twofold. Well, they go hand in hand. The presumption relates to notice and not contract formation. Then a remand would be necessary to Judge Hellerstein in order to determine whether he accepted by continuing to work because he had knowledge of it. And I urge the Court to follow Judge Kogan's analysis in Alvarez with one exception. Macy's points out, and I believe correctly, that Judge Hellerstein... I'm sorry. Judge Kogan uses the New York Court of Appeals language about clear and explicit agreement, whereas this Court's made clear that it just has to be by a preponderance of the evidence. But the underlying principle is the same as far as whether you focus on by a preponderance of the evidence or clear and unambiguous evidence of manifestation of assent. The key still has to be is there a manifestation of assent. Would the issue then be whether he attended a session and learned or at least was present when the arbitration waiver was discussed or simply whether at one of those sessions Macy explained to employees who were there that arbitration was to be waived or could be waived? Oh, no. How precise must the finding be made? I think there has to be notice. I hate to make Macy's argument. Notice given or notice perceived? Notice received. So the hearing would be about whether he was actually present at a hearing when this was discussed. Or Judge Hellerstein could just as simply find I credit Macy's testimony that he got it. With the mailing itself. Right. Well, actually, I don't... The mailing presumption was rebutted and focused on whether he was adequately informed or had the opportunity to be informed at the employee discussions. I'm trying to get your view whether the test is did he attend a hearing or did Macy's do enough by having sessions with employees who chose to attend? I'm going to go in between. And that would be... So, for example, if Macy's said to all its employees, we're having a mandatory session where we're discussing the rollout program. Mr. Weiss, you will be working on this day. You must come in barring illness, some excusable situation. He says, you know what? I'm not coming. I'd be hard pressed to say Macy's has failed. He's staying away from something where he knows how specific it's going to be. Right. But let me ask one question. Macy's may have described their new dispute resolution program and its many phases and its benefits and answered the questions that are addressed in the brochure, but at the end of the day, it wasn't a mandatory program. They gave people the option to opt out. Well, steps one through three are mandatory. Yes, but as to arbitration, as to waiving your right to jury trial, that's what the opt-out form that was mailed at your house was. So your mere attendance at the meeting, to the extent that that was part of the program, the proposition wasn't that you attend, you learn, if you come to work the following day, you have now consented to waive your right to jury trial and to arbitration in all instances. The program included the opt-out right. Right, but my response . . . I agree with that, but I was answering the question about for purposes of notice, what suffices. Oh, I see. So then the burden was on him to opt out. Correct. The issue is whether he knew. For purposes of assenting, Judge Hellerstein, Judge Kogan, this court in Manigault, everybody agrees that the state, no matter how much we don't like it, possibly, but the state of the law is a person, an at-will employee, who receives notice of a change in his or her conditions of employment and continues to work is bound by those changes in conditions. The issue is did he have notice. So that's what I was responding to, Judge Cornyn. And I'm still . . . So if he's . . . What I'm sticking on a little bit is the program is described in the written materials, described the option to employees to opt out, and so showing up at work the following day, if the description given in the actual meeting in person was complete and consistent with the written materials, then showing up at work the next day wouldn't necessarily mean anything. I mean, you probably have a couple days to figure out whether you're going to opt out or not, right? Certainly. Again, he still has . . . any employee still has the right to opt out. They can't take that off the table. That is a right. But if the employee knows about the opt out and chooses not to opt out, assuming you don't find ambiguity, then they're stuck. Thank you. You've reserved two minutes for . . . Oh, I'm sorry. Looking at the wrong part of the forum. I think you've heard enough. We'll leave it at that. Thank you, Mr. Kornbaum. Mr. Parsons, you have two minutes. Yes. Just three quick things. Just to reemphasize, in terms of the actual evidence that was presented, in terms of whether or not it was confusing, I already quoted one provision from Joseph's declaration, but he also stated, quote, if he reviewed the documents, he, quote, would have explained to him that the documents provide for him to arbitrate employment-related disputes with Macy's, unquote. So, again, the only evidence before Judge Hellerstein was that the only person who offered any testimony about what it meant is that he understood it and he understood what to do. With regard to the presumption of mailing, just to reemphasize, it wasn't just one mailing. There was the informational sessions that were given approximately six months before the implementation of the program. Do you know whether the informational sessions, or does the record show, whether the informational sessions described the right to opt out? Yes, in the PowerPoint presentation. They did? That's my recollection, yes. The PowerPoint's in the record, right? It is. In fact, the PowerPoint was actually even entered into evidence by Mr. Weiss in opposition to the original. Does the presumption of mailing apply regardless of the personal circumstances of the recipient, or do the personal circumstances affect whether the presumption should be applied? I haven't seen any case law that suggests there's any sort of special rule that the presumption applies, and the only circumstances in which it's been rebutted or overcome is when there's some evidence that the regular office practice was not followed. And that's not what we have here. As one of the courts that we cited to, New York has quite uniformly held that an affidavit of non-receipt is insufficient to rebut the presumption of mailing. And the last point I wanted to make, just in terms of the Alvarez decision and Judge Kogan, counsel referenced the fact that Judge Kogan utilized the wrong standard in evaluating it, and that is critical to understanding Judge Kogan's analysis in Alvarez. In many ways, a lot of the problems that have come, that have resulted in this case being here before the Court, is Judge Kogan's analysis that he's not bound by cursory or unsound decisions in summary orders by the Second Circuit, but in reaching that conclusion and analyzing the presumption of mailing, he utilized a standard that is preempted by the FAA, that this Court 25 years ago held is not the appropriate evidentiary standard for an arbitration agreement, and everything that flows from that decision is based on that faulty premise and that faulty standard. That is the burden to prove.  Thank you, Your Honor. Thank you. Thank you both. We'll reserve decision, and we'll get you a decision in due course.